CHANDLER, Justice,
for the Court:
¶ 1. This appeal arises from an order granting an irreconcilable-differences divorce on October 3, 2008. David Rogillio has raised issues regarding the award of alimony. David and Helen Rogillio were married for eleven years, living in Vicksburg with their minor son. Rogillio v. Rogillio, 57 So.3d 1246 (Miss.2011). On March 12, 2007, in Warren County Chancery Court, David filed for a divorce on the grounds of habitual cruel and inhuman treatment, or, in the alternative, irreconcilable differences. He filed an Amended Complaint for Divorce on September 21, 2007, listing habitual drug use and adultery as additional grounds for divorce.
¶ 2. On January 30, 2008, Helen filed her Answer and Counterclaim. At trial, the parties ultimately consented to a divorce based on irreconcilable differences and entered an Agreed Order Allowing Withdrawal of Contested Allegations.
¶ 3. On October 3, 2008, the court entered a Final Judgment of Divorce, dividing the marital assets and awarding lump-sum alimony of $15,000 to Helen. Helen timely appealed to the Court of Appeals, arguing that she should have been awarded periodic-payment alimony. The Court of Appeals affirmed the chancellor’s ruling. Helen then petitioned to this Court, which held that the chancellor had abused her discretion through errors in her accounting of the marital assets. On March 3, 2011, this Court reversed and remanded so that the chancellor could properly classify and evaluate all assets of both parties.
¶ 4. On remand, the chancellor found that the previous judgment did contain accounting errors. After recalculating the marital assets, the chancellor ordered David to pay Helen lump-sum alimony of $18,204, periodic-payment alimony in the amount of $1,500 per month, and $4,369.50 for her attorney fees. David appealed pro se on June 7, 2011. He now raises the following issues: (1) the chancery court erred in awarding periodic-payment alimony; and (2) the chancery court erred in ordering David to pay Helen’s attorney fees. Helen did not file a brief in response to David’s claims. Finding that the chancellor did not abuse her discretion, we affirm the decision of the chancery court.

FACTS

¶ 5. Helen and David were married in September 1997. They have one child together from their marriage, a son, who was born in 2001. On March 12, 2007, David filed for a divorce in Warren County Chancery Court. He sought a divorce on the grounds of habitual cruel and inhuman treatment, or, in the alternative, irreconcilable differences. He filed an Amended Complaint for Divorce on September 21, *152 2007, to add habitual drug use and adultery as additional grounds for divorce.
¶ 6. David and Helen consented to a divorce based on irreconcilable differences and entered an Agreed Order Allowing Withdrawal of Contested Allegations. They also agreed that David would have primary custody of their son. The agreement also allowed Helen visitation rights, as determined by their licensed clinical social worker.
¶ 7. The chancellor entered an order granting an irreconcilable-differences divorce on October 3, 2008. In her order, the chancellor awarded lump-sum alimony of $15,000. Helen appealed the decision, arguing she should have been awarded periodic-payment alimony. The Court of Appeals affirmed the chancery court’s decision. This Court, on writ of certiorari, reversed and remanded the chancellor’s ruling “so that the chancellor may properly classify and evaluate all assets of both parties and then consider the need for alimony consistent with this and prior opinions.” Rogillio v. Rogillio, 57 So.3d 1246, 1251. In remanding the case, this Court stated the following:
The lump-sum alimony payments may be increased, consistent with an accurate accounting of the marital and separate estates set out within this opinion. Furthermore, an award of permanent periodic alimony may be considered, balancing the husband’s right to live as normal a life as possible with a decent standard of living and the wife’s entitlement to support corresponding to her rank and station in life.
Id. In his dissent, Chief Justice Waller stated that the chancellor had divided the assets equitably and had awarded a sufficient amount of alimony. Id. On remand, the chancellor entered an order increasing Helen’s lump-sum alimony, awarding Helen periodic-payment alimony, and awarding Helen reimbursement for attorney fees.
¶ 8. At the time the case was on remand, Helen had been living in the marital home for eighteen months. For the equitable distribution of the marital assets, David and Helen left it to the court to divide the following items: David’s Thrift Savings Plan (TSP) account, David’s PERS retirement account, all checking and savings accounts, and the marital home. The chancellor ultimately divided the marital property under the advisement of this Court, calculating that the couple had $299,895.42 in marital assets and $227,490.96 in marital debt.
¶ 9. The chancellor awarded David $436 per month in child support in the form of a social security check the child received as a result of Helen’s disability. David and Helen each were awarded half of the remaining marital assets and each ordered to pay half of the remaining marital debts.[1] David was given responsibility for the first mortgage on the marital home and the PLUS loan, which he took out to pay for his daughter’s education. Helen was given the responsibility of the mobile home, which included the delinquent rent, repair fees, and the mortgage. The chancellor ordered David to pay Helen lump-sum alimony in the amount of $18,204, periodic-payment alimony in the amount of $1,500 a month, beginning on the first day of the month, and $4,369.50 for attorney fees.
¶ 10. On appeal, David argues he is not in a financial position to pay periodic-pay *153 ment alimony. In particular, he claims that the record reflects his inability to pay alimony and pay his monthly recurring expenses. Helen is around 43 years of age and was employed as a registered nurse during her marriage to David. When Helen was 21, she was diagnosed with neurofi-bromatosis, a genetic disease which has claimed the lives of multiple members of her family and for which she takes pain medications. She stopped working in 1998 due to her illness and is currently covered under David’s insurance plan. On her own, Helen’s medication would no longer be covered under David’s medical insurance. David was fully aware of Helen’s illness prior to their marriage. During the marriage, Helen had more than ten surgeries to remove tumors from various parts of her body. Her Social Security disability benefit in the gross annual amount of approximately $9,324 is her only source of income. David is around 47 years of age, is in good health, and has secure employment as an engineer, earning approximately $83,372 per year.

STANDARD OF REVIEW

¶ 11. “A chancellor’s findings of fact -will not be disturbed unless manifestly wrong or clearly erroneous.” Sanderson v. Sanderson, 824 So.2d 623, 625 (Miss.2002) (citation omitted). “In the case of a claimed inadequacy or outright denial of alimony, we will interfere only where the decision is seen as so oppressive, unjust or grossly inadequate as to evidence an abuse of discretion.” Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993). “This Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his [or her] discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied.” Sanderson, 824 So.2d at 625-26 (citation omitted).
¶ 12. In the present case, Helen did not file a brief in response to David’s appeal. This Court has held that “[fjailure of an appellee to file a brief is tantamount to confession of error and will be accepted as such unless the reviewing court can say with confidence, after considering the record and brief of appealing party, that there was no error.” Dethlefs v. Beau Maison Dev. Corp., 458 So.2d 714, 717 (Miss.1984) (citation omitted). Automatic reversal is not required where the appellee fails to file a brief. Selman v. Selman, 722 So.2d 547, 551 (Miss.1998). However, the appellant’s argument “should at least create enough doubt in the judiciousness of the trial court’s judgment that this Court cannot “ ‘say with confidence that the case should be affirmed.’” Muhammad v. Muhammad, 622 So.2d 1239, 1242 (Miss.1993) (quoting Griffin v. Breckenridge, 204 So.2d 855, 855 (Miss.1967)).

ANALYSIS

If 13. We find that the chancellor did not abuse her discretion when awarding Helen periodic alimony and reimbursement for her attorney fees. David and Helen left it to the court to divide the TSP account, PERS retirement account, all checking and savings accounts, and the marital home. Although the mobile home was acquired by Helen prior to the marriage, the chancellor classified it as a marital asset because its proceeds were mingled with household money and used for the benefit of the family.
¶ 14. The chancellor thoroughly examined the guidelines set forth in Ferguson v. Ferguson to divide David and Helen’s marital estate equitably. Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994). The chancellor also found that David and Helen had contributed equally toward marital stability of the home and harmony of the family relationships. The record reflected *154 that David earns ten times as much income as Helen and that he has a stable earning capacity. The chancellor noted, however, that it is very unlikely Helen will obtain employment in the future. After the court calculated the marital debts, it found that David received a total of $214,197.71 in marital assets and $159,791.47 in marital debt, with a net of $54,406.24. Helen suffered a substantial deficit, receiving $85,697.71 in marital assets and $67,699.47 in marital debt, for a net of $17,998.24.
¶ 15. After finding that an equitable deficit existed, the chancellor proceeded to the consideration of alimony under the factors we outlined in Armstrong. Armstrong, 618 So.2d at 1280. Mississippi recognizes four distinct types of alimony: permanent, lump-sum, rehabilitative, and reimbursement. Deborah H. Bell, Mississippi Family Law § 9.02 (2005). Rooted in the husband’s duty to support his wife after the dissolution of marriage, permanent periodic alimony serves as a substitute for the marital-support obligation. Id. at § 9.02[l][a],
¶ 16. In examining the Armstrong factors, the chancellor may consider them as an “overall combination” and need not individually list each one. Hoggatt v. Hoggatt, 766 So.2d 9, 12 (Miss.Ct.App.2000). It is unlikely that the chancellor will highlight “a single category such as length of marriage, prior standard of living, or ability to pay.” Id. Finding that the Armstrong factors favored alimony, the chancellor awarded $18, 204 in lump-sum alimony.
¶ 17. The chancellor also considered periodic-payment alimony and relied on this Court’s statement that “Consistent with Armstrong, a financially independent spouse may be required to support the financially dependent spouse in the manner in which the dependent spouse was supported during the marriage, subject to a material change in circumstances.” Rogillio, 57 So.3d at 1250. The chancellor noted the significant difference in David’s and Helen’s incomes, along with Helen’s inability to support herself. She stated that, “Clearly, without periodic alimony, Helen will not be able to financially support herself in the manner in which she was supported during the marriage.” After discussing the factors set forth in Hemsley v. Hemsley for periodic alimony, the chancellor awarded Helen $1,500 per month in periodic-payment alimony. Hemsley v. Hemsley, 639 So.2d 909, 912-13 (Miss.1994). The chancellor reasoned that periodic alimony was a proper way to provide Helen with the same support she obtained in the marriage. However, she also stated that any award must also allow David to live a normal life under a reasonable standard of living. After examining David’s 8.05 Financial Statement, the chancellor held David would have sufficient income to maintain a normal lifestyle.[2] Based on his additional monthly income of $1,753, the court found a periodic alimony of $1,500 a month was appropriate.
1f 18. On appeal, David argues he is not in a financial position to make payments to Helen. However, the decision to award alimony is left to the discretion of the chancellor. McEachern v. McEachern, 605 So.2d 809, 814 (Miss.1992). This Court finds that the chancellor conducted a thorough and proper analysis in light of the circumstances. See Powers v. Powers, 568 So.2d 255, 257 (Miss.1990) (holding that a chancellor’s decision should not be *155 reversed on appeal unless the chancellor’s decision was manifest error).
¶ 19. When one party will suffer a deficit after the marital property has been equitably divided, alimony should be considered. Lauro v. Lauro, 847 So.2d 843, 848 (Miss.2003). We agree with the chancellor’s conclusion that Helen would be left with a significant deficit and therefore is entitled to alimony. We also find that the chancellor properly considered lump-sum alimony and periodic-payment alimony and conducted an adequate analysis for both forms of alimony. In discussing the factors set forth by this Court in Cheatham v. Cheatham, the chancellor concluded that lump-sum alimony should be awarded. Cheatham v. Cheatham, 537 So.2d 435, 438 (Miss.1988). David does not contest this on appeal.
¶20. David argues that the chancellor abused her discretion in her analysis of the Armstrong factors when deciding whether to award periodic-payment alimony. The chancellor determined that the following factors favored alimony: the health and earning capacities of the parties, the income and expenses of the parties, the length of the marriage, and the standard of living of the parties both during the marriage and the time of support determination. In regard to the health and earning capacity of the parties, David argues that Helen’s admission to recreational scuba diving and riding of four-wheelers creates an issue as to whether Helen is prevented from working. The chancellor was aware of this admission and did not abuse her discretion in concluding that this factor favors an award of alimony. David also questions the chancellor’s decision to award alimony based on the income and expenses of both parties. Although David would prefer to have more disposable income, the chancellor did not err in her decision to award Helen $1,500 in alimony. The chancellor considered David’s monthly expenses and noted that he earns nearly $84,000 a year. Therefore, we find this argument to be without merit.
¶ 21. David also argues that the chancellor incorrectly determined that David’s and Helen’s eleven-year marriage favored alimony. In Parsons v. Parsons, this Court held that periodic alimony was appropriate in a marriage that had lasted three and a half years. Parsons v. Parsons, 678 So.2d 701, 705 (Miss.1996). This Court ultimately held that the wife had “significant monthly expenses, but absolutely no income, thus, no means of paying these expenses” and affirmed the chancellor’s decision. Id. We find that the chancellor did not abuse her discretion in finding that the length of marriage favored alimony.
¶ 22. David also challenges the chancellor’s conclusion that the factor concerning the standard of living for both parties during and after the marriage favors an award of alimony. The chancellor reasoned that Helen would be unable to maintain her mobile home or marital residence based on her income alone. David claims that the chancellor should have considered David’s current living situation and lack of savings. There is no doubt that Helen’s standard of living has changed significantly after the divorce. Although David claims to suffer financial hardship, he makes nearly ten times as much as Helen in a given year. Based on the evidence provided in the record, we find that the chancellor did not abuse her discretion in finding that this factor favors alimony.
¶ 23. The chancellor applied the Armstrong factors to the evidence presented and determined that an award of alimony was appropriate. This Court finds that, in her findings of facts and conclusions of law, the chancellor properly analyzed and applied the Armstrong factors in this case *156 with respect to alimony. Therefore, the chancellor did not abuse her discretion, and the decision of the chancery court should be affirmed.
¶ 24. Finally, David argues that the chancellor erred in awarding Helen attorney fees on remand in light of his financial position. We disagree. “The award of attorney fees in divorce cases is left to the discretion of the chancellor, assuming he follows the appropriate standards.” Creekmore v. Creekmore, 651 So.2d 513, 520 (Miss.1995). The award of court costs likewise is entrusted to the sound discretion of the chancellor. Martin v. Martin, 566 So.2d 704, 707 (Miss. 1990). This Court has stated that, where the record shows an inability to pay and a disparity in the relative financial positions of the parties, there is no error in awarding attorney fees. Hammett v. Woods, 602 So.2d 825, 880 (Miss.1992). However, the record must reflect the requesting spouse’s inability to pay his or her own attorney fees. Benson v. Benson, 608 So.2d 709, 712 (Miss.1992).
¶ 25. Concluding that Helen should be awarded attorney fees, the chancellor relied on this Court’s statement in McKee v. McKee:
The fee depends on consideration of, in addition to the relative financial ability of the parties, the skill and standing of the attorney employed, the nature of the case and novelty and difficulty of the questions at issue, as well as the degree of responsibility involved in the management of the cause, the time and labor required, the usual and customary charge in the community, and the preclusion of other employment by the attorney due to the acceptance of the case.
McKee v. McKee, 418 So.2d 764, 767 (Miss.1982). The chancellor reasoned that the testimony and evidence presented made it clear that there was indeed a financial disparity between the two parties and that Helen was unable to pay all the attorney fees. This Court finds that the chancellor did not abuse her discretion in her conclusion.

CONCLUSION

¶ 26. We find that the chancellor did not abuse her discretion in her award of alimony or her award of attorney fees. Therefore, we affirm the decision of the chancery court.
¶ 27. AFFIRMED.
WALLER, C.J., CARLSON, P.J., RANDOLPH, LAMAR, KITCHENS, PIERCE AND KING, JJ., CONCUR. DICKINSON, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION.

. The remaining marital assets consist of David’s TSP account, David’s PERS retirement account, David's savings account, and David's checking account. The remaining marital debts are the second mortgage on the marital home, the TSP loan, the mutual credit card, other credit cards, and a construction lien.

. In considering David's periodic-payment alimony to Helen, the chancellor noted that his repayment on the TSP loan could be changed, that he was no longer having to pay child support for one of his other children, and that he was no longer having to pay for Helen’s automobile insurance.